FLORENCE REID, by her next friend, plaintiff in error, *vs.* ALEXANDER R. REID *et al.*, defendants in error.

The exercise of the discretion of a Chancellor in refusing to appoint a Receiver, will not be controlled except when it is abused.

Equity. Bill for injunction and appointment of a Receiver. Decided by Judge VASON. Chambers. Dougherty county. January, 1868.

Crawford M. Mayo, as *prochein ami* for Florence Reid, filed a bill against Alexander R. Reid, containing the following charges: Florence was the infant daughter of Alexander R. Reid and his wife, Mollie S. V. Reid, daughter of Benj. O. Keaton. On the first day of January, 1860, Keaton, in consideration of his love for Mrs. Reid and Florence, and in order to make suitable provision for the education and maintenance of the children of Mrs. Reid, and for the support and maintenance of herself for life, conveyed to said A. R. Reid certain land, mules, horses, cattle, hogs, etc., and plantation-tools and implements, to have and to hold the same for the sole and separate use of Mrs. Reid, and for the maintenance and education of her children, and at her death, to vest in said children, and A. R. Reid took the same, with the promise that he would carry out such trust, giving a written receipt therefor, a copy of which is exhibited.

For like purposes, and subject to the same trusts, Keaton gave A. R. Reid other personal property. Mrs. Reid died, leaving no child but Florence, who is six years old. A. R. Reid has squandered all of the personalty last given but two

Reid *vs.* Reid.

mules, has rented out the farm to Wm. J. Reid for fifteen bales of cotton, five of which had been paid to him and shipped away; is a man of dissolute habits, negligent of his business, wasteful in the use of money, and wholly unfit, by association and habits, to take care of said property, which belongs to said Florence, or of her person. Benjamin O. Keaton is in life, and is made a defendant to this bill. . The prayer is that he be restrained from conveying said land, that Wm. J. be enjoined from paying any more rent to A. R. Reid, and that A. R. Reid be enjoined from collecting any more rent, from disposing of, or changing, the *status* of any of said property, that he be dismissed from his trust, and another trustee be appointed, and that, meanwhile, a Receiver be appointed to take charge of, and hold, said property subject to the order of the Court.

The receipt exhibited is as follows :

GEORGIA, DOUGHERTY COUNTY.

The following negroes, to-wit:   .*    *    *    *    *    *    *, and also the plantation known as the Burrill Hill Place, in this county, containing six hundred and twenty-five acres, agreeable to survey, in the first district, valued at $7,800, which I receive in trust for my wife, Mollie S. V. Reid, and agree to hold the same for her as a portion given to her by her father, B. O. Keaton, as a part of her portion of his estate under his will, and which I am to hold in trust for her, as his will directs, and which is to be considered as a portion of said estate to my wife. January 1st, 1860.

ALEX'R R. REID.

*Witness*—F. O. WELSH.
A. J. MACCARTHY, J. P.

Judge Vason granted the injunction, and ordered cause shown why a Receiver should not be appointed.

A. R. Reid answered the bill. He denied that he received the said property upon any other or different terms than that stipulated in said receipt, and claimed that upon the death of his wife the property was his own. Of Keaton's will he knew nothing when he took the property. He denied that he had mismanaged the property, and alleged that, on the contrary, he had added his own capital to it, had devoted his entire attention to its management, and had man-

aged it well, as he would show by the exhibited showing of
the workings of the farm since 1860.   He said that he is
sober, economical and thrifty; that he is taking good care of
his daughter, having her in a minister's family, where her
education and morals will be cared for, and that so far from
squandering the property, out of only three bales of cotton
received from Wm. J. Reid, as rent for said farm, and sold
for $225 00, he had sent his daughter $123 00, to pay for
schooling, board, etc., and expended the balance on the farm.
He insisted that the bill was not at the instance of his
daughter, but was brought by Mayo, who disliked him, etc.
Before this answer was filed, a demurrer had been filed.  The
grounds of demurrer were, that the bill contained no equity,
that it showed a parol trust with a life-estate and remainder,
which estate could not be so made, that under the bill, defend-
ant had been in possession of said property for more than
seven years, exercising exclusive dominion over the same,
and the same belonged to him as heir of his wife, and that
the parol gift made an absolute estate in the heirs of Mrs.
Reid (at her death) free from any trust.

The consideration of this demurrer and of the appoint-
ment of a Receiver and dissolution of said injunction came
before the Chancellor, and in addition to the foregoing, the
Court had various *ex parte* affidavits, *pro* and *con*, produced
and read.

The will of B. O. Keaton was read.   In it there was not
the slightest allusion to Mrs. Reid, nor any general clause
which could affect her, but it contained gifts to other chil-
dren of Keaton and a bequest to his daughter Rebecca, under
certain trusts therein named.   And it was accompanied by an
affidavit by Keaton, stating substantially that he intended to
give to Reid's wife said property on the same trust as Re-
becca held her property in the will, and that Reid agreed to
accept it on those terms, and gave said receipt to carry out
that intention.

John F. Cargile, James W. Mayo, James J. Mayo and A.
Faircloth made affidavit that Reid was careless in the manage-
ment of property, reckless in the expenditure of money, waste-

ful and dissolute in his habits, and in their opinions unfit to manage property, and further, that they knew his general character which was bad, and that from that character they would not believe him on oath. On the other hand, F. O. Welch, John Murphy, Wm. J. Reid, F. Lippitt, B. Smith and H. M. Campbell made affidavit that Reid was a sober, industrious and economical man, not disposed to dissipation or extravagance, or loose or careless in the expenditure of money or property; that they had always and still did regard him as a man of sobriety and good moral character and habits, and they have reason to believe he is ordinarily prudent in his expenditures, and a very good manager of his property and means.

After argument, the Chancellor overruled the demurrer, refused to appoint a Receiver, and dissolved the injunction. The plaintiff in error assigns the refusal of a Receiver and the dissolution of the injunction as error, and in the same bill of exceptions the defendant in error complains of overruling said demurrer.

WRIGHT & WARREN, for plaintiff in error.

MORGAN & HARRIS, for defendant in error.

HARRIS, J.

The bill filed alleged that the grand-father of Florence Reid, in order to make provision for the mother of said Florence, and said Florence gave to respondent, *in trust for them*, land mules, etc., a life-estate in Mrs. Reid in said property, and at her death the property to vest in her children; that Mrs. Ried died, leaving but one child, the complainant, and that defendant took upon him said trust, and promised to carry it into effect. The bill alleged that defendant received the property from Benjamin O. Keaton, the grandfather of complainant, and gave a receipt in writing therefor, a·copy of which is appended, as an exhibit, to the bill. Mismanagement of trustee was alleged, bad character, etc., and

appointment of a Receiver asked, to take charge of the property in controversy and prevent waste.

To the bill thus framed, a general demurrer was filed by the defendant. Upon argument below, the demurrer was overruled. Judge Walker and myself affirm that judgment. As the allegations of the bill were admitted by the demurrer to be true, we cannot perceive how, a trust for complainant being alleged and admitted, a demurrer could be sustained. Judge Warner places his dissent from us upon the ground that the *receipt* appended *shows no trust for the complainant* in the property given by Keaton. Whether there be an actual or implied trust for complainant, cannot be ascertained until the answer and other proofs in the cause shall have been heard before a jury. To it, under the charge of the Court, we remit that question. I am persuaded that there is an ambiguity in the receipt which requires explanation and which the Code allows to be removed by parol testimony.

The receipt acknowledges the trust for his wife, Mrs. Mollie A. Ried, (mother of complainant,) and defendant agreed to hold the property for her *"as Keaton's will directs."*

The paper prepared by Keaton (who is still alive) and called *his will,* and referred to in Reid's receipt, when examined will be found to make no mention whatever of his daughter, Mrs. Reid or her daughter, but devises the bulk of his property by separate paragraphs, to his sons and to a daughter, her share under certain limitations and restrictions.

The question, then, under the receipt, is whether Keaton and Reid did not both have reference to the limitations of this latter devise—Keaton giving to Mrs. Reid as he gave to the other daughter, and Reid receiving the property under the like restrictions.

If this was the donor's purpose—as the receipt is clearly ambiguous—there is now no technical rule to prevent him from shewing what was intended. I am sensible of the fact that it has been adjudicated that a remainder cannot be established by parol testimony, but when Keaton shall have been heard as a witness and the reference in Reid's receipt—to his holding the property *"as Keaton's will directs"*—fully ex-

plained by him, very probably all the difficulties which would embarrass at law can be readily surmounted in a court of equity, especially when dealing with a trustee.

We all unite in affirming that portion of the judgment below in which the Judge refused to take the property out of the possession of Reid and place it in the hands of a Receiver. The testimony as to Reid's habits and character was conflicting—but after weighing it, and refusing the prayer of the complainant, we will not interfere with the exercise of a discretion which is not shewn to have been abused.

Judgment affirmed.