IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

### JANUARY TERM, 1878.

PRESENT—HIRAM WARNER..........CHIEF JUSTICE.
L. E. BLECKLEY...........JUDGE.
JAMES JACKSON.......... "

GARDNER, by next friend, *vs.* HOWELL, Jr., *et al.*

[Judge BLECKLEY being disqualified on account of having been of counsel, Judge LESTER, of the Blue Ridge circuit, was designated by the governor to preside in his stead.]

This court will not interfere with the discretion with which a chancellor is invested, to appoint, or decline to appoint, a receiver, unless it has been manifestly abused.

Receivers. Before Judge LESTER. Fulton County. At Chambers. January 21, 1878.

Reported in the opinion.

E. B. BROYLES; HENRY HILLYER, for plaintiff in error.

HOPKINS & GLENN, for defendants.

LESTER, Judge.

This was an application for the appointment of a receiver, and the questions presented for adjudication grow out of the following state of facts:

On the 4th day of July, 1866, Nathaniel E. Gardner executed a trust deed by which he conveyed to one Charles W. Dill certain real estate, located in the city of Atlanta, for the benefit of his two daughters, Lizzie Ida Gardner and Mary Ellen Gardner. At the time of making the deed, Nathaniel E. Gardner was a widower, and these two daughters were his only children. One of them was about ten years of age, and the other was about five years of age.

The deed recites, that for and in consideration of the natural love and affection which he has and bears to his said daughters, and for the purpose of providin ga support and maintenance and education for them, and also in consideration of ten dollars to him in hand paid, he, the said Nathaniel E. Gardner, gives, grants, and conveys the property described in the deed, to the said Charles W. Dill as trustee, and to such other trustee or trustees as may hereafter be appointed in his place, and that he or they are to have and hold the said property "in trust for the sole and separate use, benefit and behoof of the said Lizzie Ida Gardner and Mary Ellen Gardner, for and during their natural lives, and at their death, or the death of either of them, to be equally divided, share and share alike, among their children. But in case either of said daughters should depart this life having no child or children, or the issue of a child or children in life at her death, then, and in that event, the said property shall go to and vest in the other daughter, or, in case of her death, to her child or children, or issue of child or children if there should be any living, but if my other daughter should be dead, without child or children, or the issue of child or children living, then to go to and vest in any other child or children that I may have living, share and

share alike. I hereby further direct, that my two daughters shall own said property in common during their minority, or until one of them shall marry." The deed then provides for dividing the property between the two daughters when they arrive at twenty-one years of age, or when either of them should marry, by three men to be selected by the trustees, but it also distinctly stipulates as follows: " I hereby further direct and require that no part or portion of the *corpus* of said estate shall ever be sold until the life estate is ended, for any purpose whatever, unless it shall become less profitable than ordinary investments, or my daughters should desire to change their residence to some other city, or for some other like good and substantial reason; but if such reason should ever exist, the fund shall be re-invested; and before said sale shall be made, I hereby direct that full and satisfactory reason shall be given, and clear and sufficient proof be made to the chancellor granting said order, that such necessity exists, and that the proceeds of the said sale when made, shall be reinvested in like property, or property as substantial in permanent value, and as productive in its yield of profits."

About five months after the making of the deed to Dill, for the benefit of his two daughters, Nathaniel E. Gardner, being then about fifty-one years of age, intermarried with one Miss Mary E. Carroll, who was then about twenty-one years of age, and on the 26th day of August, 1867, he filed a bill in equity, in Fulton superior court, against Charles W. Dill, the trustee of his daughters, alleging that he was drunk at the time he executed and delivered the deed to Dill, that the deed was purely voluntary, that he received no valuable consideration therefor, and that at the time it was made he was actually intoxicated to such an extent as to be deprived of reason, and that whilst in this condition he conveyed away property worth eighty-eight thousand dollars, which he had acquired by honest industry.

He further alleged in his bill, that when said deed was executed he owed six thousand dollars, four thousand of

which was due for the purchase-money of some of the property conveyed by the deed, and that two thousand dollars of said purchase-money was still unpaid at the time of filing his bill.

He also stated in his bill, that he had been endeavoring to reduce his consumption of liquor and become more sober, and that he had so far succeeded in this endeavor as to come to a deliberate pause in his wild career; that having cooled off, he felt once more capable of looking into his affairs calmly and judiciously, and of ordering his conduct aright; that he found himself passing to old age, with a young wife at his side, and his property and means of support gone; whereupon he prayed that the deed of trust which he made to Dill be delivered up and canceled.

Charles W. Dill was the only defendant to this bill, and he alone was served with a copy of it. It does not appear that Dill, or any one else, ever answered the bill, but it does appear that on the 19th of May, 1869, a verdict and decree were rendered in the case, and that the following is a copy of the decree:

"Whereupon it is adjudged and decreed, on the terms specified below, that the deed mentioned in the bill be taken and considered as operative and valid from its date, and that the trust be executed. It is further decreed as follows: That out of the trust property be paid, first, the cost of this proceeding; secondly, the sum of one thousand dollars as a fee to complainant's solicitors; and thirdly, the like sum of one thousand dollars as a fee to defendant's solicitors. Also, that for and during the life of the complainant, the trustee do and shall pay to him annually, on the thirty-first of December, out of the income and profits of the trust estate, the sum of one thousand dollars for his personal support and expenses; and in case said income and profits should prove insufficient, then the deficiency shall be supplied from the *corpus* in such manner as the chancellor may direct."

On the 26th of December, 1871, Mary Ellen Gardner

died without leaving a child or children, or issue of a child or children.

On the 4th of November, 1874, Lizzie Ida Gardner intermarried with Clark Howell, Jr., and on the 17th of December, 1874, upon the petition of Charles W. Dill, Clark Howell, Jr., and his wife, Lizzie Ida Howell, the judge of the superior court of the Atlanta circuit passed an order at chambers, of which the following is a copy :

" Whereupon it is ordered and decreed, that upon said C. W. Dill having a settlement with said Howell, as mentioned in said petition, he be removed as said trustee, and then that Clark Howell, Jr., shall be, and he is hereby, appointed trustee in lieu of said Dill, with all the rights, duties, liabilities and powers of said Dill, under said trust deed, and with power in said Howell, as trustee, to complete the power of sale given to said Dill by the order in said petition named ; *provided, nevertheless*, that no part of this order shall take effect till said Howell, Jr., shall have filed, in the office of the ordinary of said Fulton county, a bond in the sum of ten thousand dollars, with good security, to be approved by said ordinary—said bond to be payable to said ordinary and his successors in office, for the benefit of the beneficiaries under said deed, conditioned well and truly to perform his duties as such trustee under said deed, and providing therein that the ordinary may, when he may deem it necessary, require any additional bond for the faithful execution of said trust."

Before this order was taken, Nathaniel E. Gardner was appointed guardian *ad litem* for Mrs. Lizzie Ida Howell, who was a minor, and also for Mollie E. Gardner, who was then a babe, and his daughter by his second wife, and he was served with the petition, and filed an answer thereto, stating that the facts set out in the petition were true, and that he saw no reason why the prayer of the petitioners should not be granted.

It also appears from the record, that pursuant to the order of the chancellor, Clark Howell did file with the ordinary of Fulton county the required bond, *with good security.*

On the 21st day of January, 1875, Nathaniel E. Gardner executed and delivered to Clark Howell, Jr., as trustee for his two daughters, Lizzie I. Howell, wife of said Clark Howell, Jr., and Mollie E. Gardner, an infant two years old, another deed, in and by which said Nathaniel E. Gardner conveyed to the said Clark Howell, Jr., certain real estate in and near the town of Norcross, in the county of Gwinnett, together with " an annuity of one thousand dollars, reserved and charged upon certain real estate and valuable property, payable from year to year to the said Nathaniel E. Gardner, by his daughter, Lizzie I. Howell, and which property was by deed conveyed by said Gardner to his said daughter, and her sister, Mary Ellen Gardner, and the survivor of them, the said Mary Ellen being now dead, and dated July 4, 1866, and in default of children of said daughters, reversion to said N. E. Gardner or his heirs, said property being houses and real estate in the city of Atlanta, Georgia, hereby conveying in trust, not only said annuity, but also said reversion, should it ever happen or fall—in trust and upon the terms, limitations and trusts following : that is to say, that said Clark Howell shall hold, use and employ said estate, and, as a first charge out of said property and rights of property, for the rearing, clothing, care, support and education of the said Mollie E. Gardner, and subject to that charge, until she is fully twenty-one years of age, or marries.   She is to have a good, thorough English education, if she is capable of receiving the same, and as said Howell or his successor may determine, or as my daughter Lizzie I. Howell may appoint, my said daughter Mollie E. Gardner, may receive a more finished education, if she is capable of receiving it.   Any excess of the income or *corpus* of said property hereby given, and said annuity, shall be considered income over and above said charge, to be held in trust by the said Clark Howell, Jr., for the sole and separate use of the said Lizzie I. Howell, free from the debts or contracts of said Clark Howell, or any husband the said Lizzie I. may marry, during the life of the said Lizzie I. Howell—if not otherwise

disposed of as herein provided. And in further trust, that the said Lizzie I. Howell may, by deed, during life, or by gift or will at her death, sell and dispose of said property, or appoint the same by writing to new uses, if she so desires, with the approval of her trustee, reinvesting said property and gifts of property in such manner, for her own use, or the objects of her bounty, as she may desire."

In this state of the case, and on the 17th of September, 1877, Mollie E. Gardner, by her next friend, H. H. Carroll, filed her bill in equity in Fulton superior court, against Clark Howell, Jr., and his wife, Lizzie I. Howell, setting up and charging the facts hereinbefore detailed, and alleging that the said Clark Howell had had possession and control of all the trust property conveyed by the two trust deeds aforesaid, and for several years had been receiving the rents, issues and profits of the same, including said annuity of one thousand dollars; that two of said annual payments of one thousand dollars were past due, and that the third would soon be due and payable, and that, up to the time of filing the bill, said Howell had converted the rents, issues and profits of the trust property, as well as the thousand dollars annuity, to his own use, and had not furnished complainant with one dollar for her board, clothing, maintenance or support, but had refused so to do, although frequently called on for the same.

The bill also alleges that Howell had made no returns of his receipts from, or expenditures for, the trust property, and that he was insolvent, and that the entire income from the trust property would be wasted, and the complainant deprived of all benefit from it, if the management of the same was continued.

The complainant prayed that the said Clark Howell be removed from his trusteeship, and some other fit and proper person be appointed in his stead, who will mete out to complainant the benefits to which she is entitled under said second trust deed; and that a receiver be appointed to take possession of the trust property, receive the rents, issues

and profits of the same, and hold and dispose of them as the court may direct.

At the hearing of the application for the appointment of a receiver, the complainant, in support of her bill, read in evidence an affidavit made by Mrs. Mary E. Gardner, the mother of complainant, in which it was stated that one parcel of the trust property "will rent for fifteen dollars per month," that another "is worth, if kept in proper repair, for rent, seventy-five dollars per month," and that "on said lot is also a blacksmith shop which rents for twelve dollars per month," that another lot "is worth, by the month, seventy-five dollars for rent," that another "would readily rent for sixty dollars per month," and that Howell, through N. E. Gardner, had been in the habit, as deponent was informed and believed, of cutting and selling large quantities of wood from one lot of the trust property.

To this bill Mrs. Lizzie I. Howell filed her answer, under oath, in which she states that she is still under twenty-one years of age ; that before her father married complainant's mother, he made the trust deed of July 4th, 1866, by which he made provision for respondent and her sister, who afterwards died ; that respondent's rights under that deed were in existence at and before complainant's birth ; that afterwards the bill was filed by her father to set it aside ; that Dill, the trustee, was the only party defendant to that bill ; that it does not appear that anything was ever served on him but a copy of the bill ; that it seems he did not appear in the cause ; that respondent was not a party to that suit ; that she is informed, believes and charges, that the verdict and decree were not the result of litigation, but grew out of some sort of consent ; that no one had power, under the trust deed, to impose a charge of one thousand dollars on the trust property to be paid annually, and she prays the court and judge to set said decree aside, and to declare it null and void as to this respondent ; that she files this answer as a cross-bill ; that complainant is in the hands of those who are unfriendly to respondent, and who, for the sake of gain for themselves,

would deprive respondent of all that belongs to her; that she feels it cruel in them to place her half-sister in this position of antagonism to her; that she desires to, and, if allowed, will take complainant and care for her and provide for her. She prays that said verdict and decree may be declared void and of no effect as to her.

Clark Howell, Jr., also filed his answer under oath, stating amongst other things, that he had managed the trust property as well and faithfully as he could, and believes that he has done so prudently and efficiently; that the charge in the bill that he has appropriated to his own use any portion of the two annual instalments of $1,000.00 each, which have come to his hands as trustee under said last trust deed, is not true; that none of either of said sums of $1,000.00 has come to his hands as trustee under said last trust deed; that the trust estate embraced in the deed of July 4th, 1866, has not produced the annuity, the income and profits being insufficient to produce it; that when the trust estate was turned over to respondent, there was an indebtedness of about $9,000.00 against it; that the property had been expensive to keep up, the taxes had been heavy, and, at the same time, rents had declined and had been dull; that necessary improvements to render some of the property desirable to renters had to be made, and, on account of the debts, taxes, and proper expenses, respondent had paid out largely more than he had received; that he has not in any manner violated his trust; that complainant's mother, who swore to the bill in this case, has filed a bill to set aside the second trust deed hereinbefore mentioned, on the ground that it was executed to defraud her, and she asks that it be set aside except as to the complainant; that the said Mrs. Gardner is living apart from her husband, and they are involved in litigation.

The defendants also submitted copies of suits against Howell, the trustee, and against the trust estate, one in favor of H. H. Carroll, the next friend of complainant in this case, in which he claims $330.00 for boarding the complain-

ant from March 7th, 1875, to January 1st, 1877, at the request of complainant's mother; and another in favor of the complainant's mother, claiming $478.00 for clothing, nursing, and working for complainant, and taking care of her, from 7th March, 1875, to January 1st, 1877, and also for boarding complainant from 1st January, 1877, to 13th November, 1877.

Upon the hearing, the chancellor declined to appoint a receiver as prayed for in the bill, and that decision is the error alleged in the bill of exceptions. We do not undertake, in advance of a full trial of this case upon its merits, to decide the various questions presented by the record. Without passing upon the validity of the decree which Mrs. Howell assails in her answer, and without determining the liability of Howell, the trustee, or the state of his accounts with the trust estate, we simply decide, that, upon a careful examination of the record in this case, we see nothing to take it out of the rule which this court has frequently recognized and announced, viz: that the exercise of the discretion of a chancellor in refusing to appoint a receiver will not be controlled, except when it is abused. *Reid vs. Reid,* 38 *Ga.,* 24; 40 *Ib.,* 375; 42 *Ib.,* 46. *See, also, Barlow vs. Eason,* decided the 19th March, 1878.

We do not think that the chancellor abused his discretion in this case, and we, therefore, affirm his judgment.

Judgment affirmed.